## Jarvis v. Commonwealth.

December 12, 1947.

Ray C. Lewis, Judge.

Lewis & Weaver for appellant.

Eldon S. Dummit, Attorney General, and Paris Swinford, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Albert Jarvis has been convicted of the crime of carrying concealed a deadly weapon, to wit, a pistol, on or about his person, and his punishment fixed at confinement in the penitentiary for a term of two years. The principal ground urged for reversal of the judgment is the failure of the court to give the whole law of the case when instructing the jury. The instructions given by the court follow the instructions in Stanley on Instructions, section 842, but appellant insists that in view of the evidence an additional instruction should have been given submitting to the jury the question whether or not the pistol concealed on his person was a deadly weapon. This argument is made in the light of appellant's testimony that he had thrown away the

cylinder of the pistol before the remaining part of the pistol was concealed on his person.

Appellant and three others, including Roland Brackett, were arrested on the charge of drunkenness and placed in the Laurel County jail. Appellant was searched, but no weapon was found. Two or three persons who were confined in the jail at the time testified that appellant displayed a pistol which was stuck in his shoe with only the handle showing above the shoe. They saw the handle of the pistol when he lifted the leg of his trousers, but were unable to say the cylinder was in the pistol. One witness saw the appellant throw the pistol in the commode, but he did not know whether the cylinder was in it. When the pistol was taken from the commode it was without a cylinder, and Joe Bundy, a deputy jailer, testified that he asked appellant where the cylinder was and appellant answered: "In the commode." On cross-examination Bundy stated that he did not search the commode for the cylinder. Appellant testified as follows:

"Q. When you were arrested and put in jail, did you have this pistol with you? A. Yes.

"Q. What condition was this pistol in at the time you were arrested? A. Just like it is now.

"Q. Did it have a cylinder at that time? A. No.

"Q. Do you know what happened to it? A. Yes.

"Q. Tell the jury. A. Some boys came out and called me out and said they were going to pick a guitar. They had two pints of red whiskey. I said, 'I don't believe I will go, I have not drank any for a while.' We got in the car and went over to Morgan Gills, and played four or five tunes on the guitar, and we come on up by Macedonia, and Ken Johnson was fooling with the gun. I got scared he would shoot me with it, or somebody else. So I broke it down and took the cylinder and throwed it out the window.

"Q. Where? A. On the Macedonia Road.

"Q. Before you were arrested? A. Yes.

"Q. Who owns this gun if you know? A. Roland Brackett.

"Q. Is he one of the fellows placed in jail when you were? A. Yes.

"Q. Tell the jury whether or not you removed this cylinder after you were in jail and put it anywhere? A. I throwed it away over on the road.

"Q. You did not place it in the commode? A. No.

"Q. The cylinder was never in the gun while you were in jail? A. No."

The Attorney General takes the position that a defective pistol or revolver, even though not capable of being fired, is a deadly weapon within the meaning of KRS 435.230, which provides that any person who carries concealed a deadly weapon, other than an ordinary pocket knife, on or about his person shall be confined in the penitentiary for not less than two nor more than five years. State v. Quail, 5 Boyce 310, 92 A. 859, a Delaware case, and Mitchell v. State, 99 Miss. 579, 55 So. 354, 34 L. R. A., N. S., 1174, Ann. Cas. 1912E, 512, are cited in support of this view. In the Quail case the accused was charged with unlawfully carrying concealed a deadly weapon, namely, a revolver. The proof showed that the revolver was unloaded, and the accused contended that he was entitled to a directed verdict of acquittal since the unloaded revolver was not a deadly weapon. The court said:

"If we should sustain the contention of the defendant we fear that many persons would carry a pistol unloaded but at the same time have bullets secreted upon their person to be used if desired."

The court said further, however:

"We think that a revolver, even though unloaded or in such a defective condition that it could not be fired, cannot be lawfully carried in this state concealed upon the person."

The latter part of this statement was dictum, but was followed in Papella v. State, 6 Boyce, Del., 19, 96 A. 198.

In the Mitchell case, a prosecution for carrying a concealed pistol, the Supreme Court of Mississippi held that a pistol, temporarily inefficient because it had

no hammer or mainspring, was a deadly weapon within the meaning of the statute, but in the later case of Burnside v. State, 105 Miss. 408, 62 So. 42, 45 L. R. A., N. S., 780, it was held that a pistol which could not be loaded, unloaded or fired and was so rusty that it could not be made to open or work, was not a deadly weapon. It has been held that a pistol or revolver without an essential part, and consequently incapable of being used as a firearm, is not a deadly weapon within the meaning of a statute such as ours, and we think this is the better view. Miles v. State, 77 Tex. Cr. R. 597, 179 S. W. 567; Farris v. State, 64 Tex. Cr. R. 524, 530, 144 S. W. 249; Evins v. State, 46 Ala. 88; People v. Simons, 124 Misc. 28, 207 N. Y. S. 56; State v. Rector, 328 Mo. 669, 40 S. W. 2d 639. In Smith v. State, 89 Tex. Cr. R. 606, 232 S. W. 811, the accused was convicted of unlawfully carrying a pistol. There was some evidence that it was an old pistol without a cylinder. It was held that the accused was not guilty of the offense charged if the cylinder was missing, and the judgment was reversed because of improper instructions on that point.

If appellant's story is true, the revolver had lost an essential part. Without the cylinder it was harmless and worthless as a weapon. The essential character of a deadly weapon is not changed by dismemberment if the parts may be easily assembled so as to be effective, but here, according to appellant, the cylinder had been thrown away and was lost and was not on or about his person at the time he is charged with having committed the offense. The handle and barrel together constituted only part of a pistol just as the cylinder was only a part. Surely it would not be contended that appellant would have been guilty of the offense charged if he had retained and concealed the cylinder alone. The jury might not have believed appellant's story, but he was entitled to an instruction presenting his theory of the case. The court should have instructed the jury, in substance, if they believed from all the evidence that the pistol or revolver was without a cylinder and could not be loaded or fired and the cylinder was not on or about appellant's person when the offense was charged to have been committed, they should find him not guilty.

The Commonwealth introduced in evidence over appellant's objection fourteen 32 short Smith & Wesson cartridges which had been taken from Roland Brackett. Appellant and Brackett were together when they were arrested, and appellant testified that the revolver belonged to Brackett. Under the circumstances, the evidence was competent as bearing on the condition of the revolver and its readiness for use as a firearm. It appeared from the evidence that appellant and his companions were drunk when they were arrested, and appellant was asked where they obtained the liquor. The question was irrelevant, and should have been omitted.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.